IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YURIY PINKHASOV

    Plaintiff

v.

ALLSTATE PROPERTY AND
CASUALTY CO.

    Defendant

3:11-cv-0171
(JUDGE MARIANI)

FILED
SCRANTON

OCT 19 2012

PER ___
    DEPUTY CLERK

## MEMORANDUM OPINION

This matter arises upon the Complaint of Plaintiff Yuriy Pinkhasov ("Plaintiff"), who alleges that Defendant Allstate Property and Casualty Company ("Defendant") breached the terms of a homeowner's insurance policy when it failed to provide Plaintiff with remuneration for damage allegedly incurred at Plaintiff's residence. Defendant filed for summary judgment, and the matter is now ripe for adjudication.

## JURISDICTION

This matter is properly before the District Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

Plaintiff asserts claims for breach of contract, insurance bad faith, and alleged violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201 *et seq.*, in connection with damages sustained to Plaintiff's basement on or about August 15,

2010. (*See generally* Pl.'s Compl., ECF Dkt. 1-1.) Plaintiff originally filed this action in the Court of Common Pleas of Lackawanna County, but Defendant removed to this Court on January 25, 2011. (*See* Notice of Removal, ECF Dkt. 1.)

On April 4, 2010, Plaintiff purchased a homeowner's insurance policy ("Policy") from Defendant providing coverage against various types of loss at Plaintiff's residence. (*See* Pl.'s Compl. at ¶ 5.) The Policy provided, in pertinent part, that Defendant would "cover sudden and accidental direct physical loss." (*See* Policy, ECF Dkt. 19-3, at 7.) The Policy specifically covers damage caused by "[w]ater or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow." (*See* Policy at 9.) The Policy does not cover any loss to the residence "consisting of or caused by:"

> Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months or years, of water, steam or fuel: a) From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or, b) from, with or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

(*See* Policy at 14.)

Further, with respect to the residence and personal property, the Policy excludes coverage for losses "consisting of or caused by:"

> Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(*See* Policy at 15.)

On September 1, 2010, Plaintiff reported a claim to Defendant, who then assigned the matter to adjuster, Samuel Bauer ("Bauer"). (*See* Def.'s Statement of Material Facts ("Def.'s SMF"), ECF Dkt. 21, at ¶¶ 20-22.) On September 3, 2010, Bauer spoke with Plaintiff on the telephone, and Defendant insists that notes of their conversation reflect that Plaintiff informed Defendant that he had a leak in his basement since May or June of 2009, and that the leak had progressively worsened. (*See* Def.'s SMF ¶¶ at 21-27.) Defendant alleges that Plaintiff told Bauer that his water bill had grown increasingly higher, and that he had called the water company to inform them that he may have a leak. (*See* Def.'s SMF at ¶¶ 37-40, 43.) Defendant further alleges that Plaintiff informed Bauer that his walls and basement floor had water damage, and that it was the result of this flooding which had become increasingly more pronounced. (*See* Def.'s SMF at ¶¶ 27, 35.) Defendant denied Plaintiff's claim for coverage. (*See* Def.'s SMF at ¶¶ 28-29.)

At Plaintiff's deposition, Plaintiff testified that he did not have water in his basement prior to August 15, 2010, and denied telling Bauer that he had water intrusion since May or June of 2009. (*See* Def.'s SMF at ¶¶ 32-34.) Plaintiff also denied that he told Bauer that the water company informed him that he might have a leak. (*See* Def.'s SMF at ¶ 37.) Defendant then subpoenaed Plaintiff's records from the water company, Pennsylvania American Water. (*See* Def.'s SMF at ¶ 38.) The call log from Pennsylvania American Water indicates that on August 20, 2010, Plaintiff called and reported that he "has a broken

3

service line. Keeps saying it had been leaking for over a year. We did not locate on previous orders. He wanted all of his bills on the past year adjusted. . . ." (*See* Def.'s SMF at ¶ 40.)

## STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A district court may grant a defendant's motion for summary judgment when the plaintiff fails to provide any genuine issue of material fact. *See* Rule 56(c); *see also Krouse v. Amer. Sterilizer Co.*, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the burden to establish before the district court that the non-moving party has failed to substantiate its claims with evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1990). "The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial." *See Book v. Merski*, 2009 WL 890469, at *4 (W.D. Pa. Mar. 31, 2009)(citing *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989)("the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each

4

element of his claim to defeat a properly presented motion for summary judgment.")). The non-moving party is then charged with providing evidence beyond the pleadings to show specific facts by affidavit or by information contained "in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim." *Book*, 2009 WL 890469, at *4 (citing *Celotex*, 477 U.S. at 322; *Country Floors*, 930 F.2d at 1061).

Material facts are those whose resolution will affect the outcome of the case under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the Court is required to resolve any doubts as to the existence of material facts in favor of the non-moving party for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Firemen's Ins. Company of Newark, N.J. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment, therefore, is only precluded if a dispute about a material fact is "genuine", *viz.*, if the evidence would permit a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 247-249.

## **DISCUSSION**

Plaintiff asserts three causes of action against Defendant: breach of contract, bad faith, and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

I.   Breach of Contract

"Under Pennsylvania law, to establish a breach of contract a party must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) damages. *Amitia v. Nationwide Mut. Ins. Co.*, No. 08-335, 2009 WL 111578, at *3 (M.D. Pa. Jan. 15, 2009)(citing *Ware v. Rodate Press, Inc.*, 322 F.3d 218, 225 (3d Cir.2003)). "If an insurance company has paid the proceeds, then there can be no breach of contract claim. *Id.* at *3 (citing *Oehlmann v. Metropolitan Life Ins. Co.*, No. 06-1075, 2007 WL 4563522 (M.D. Pa. Dec.21, 2007)). In the present matter, the record is unclear as to whether or not Defendant has breached a duty arising under the Policy. It is clear, however, that Defendant has not paid Plaintiff's claim, and that Defendant refuses to pay Plaintiff on two distinct grounds: (1) the water damage incurred at Plaintiff's property was the result of slow leakage that Plaintiff reported to both Defendant and to his water provider, which allegedly falls under a specific exclusion in the Policy; and (2) the water in Plaintiff's basement is ground water originating from a source, at or below ground level, and that the damage resulting from such groundwater is similarly excluded from coverage.

With regard to Defendant's position that the water damage resulted from a slow leak, and Defendant's argument that this fact is uncontrovertibly substantiated by Defendant's notes of a telephone conversation between Plaintiff and Bauer, the Court finds that such evidence is insufficient to warrant an order for summary judgment because Plaintiff disputes the content of these notes. The fact that the content of this conversation is vigorously

6

contested, with each party offering a markedly different version of what was said by Plaintiff, renders it a disputed material fact, precluding summary judgment. A determination of the credibility of Defendant's evidence is an evaluation that must properly be entrusted to a jury, as it is not within the Court's proper role to make such factual determinations in addressing a motion for summary judgment.

Defendant further points to subpoenaed phone logs from Plaintiff's water provider that reflect Plaintiff's alleged complaints about an elevated water bill and a leak somewhere in the service line. Even if Defendant's evidence is taken as true, such evidence still fails to establish any causal nexus between a slow leak somewhere in Plaintiff's service line and the damages Plaintiff submits were sustained from a rupture at or near Plaintiff's basement. On the record thus far, there exists an obvious factual dispute as to whether Defendant's allegation of a slow leak was the cause of the water damage, or if Plaintiff's claim of a "sudden" break in the water line is what ultimately caused the damage reported by Plaintiff. The evidence of record would allow, but not require, the trier of fact to determine that a slow leak existed in the line since 2009, but that this leak caused no material damage to Plaintiff's property until a more sudden, catastrophic episode in August of 2010. The resulting damage would not have been "caused" by slow seepage under such circumstances, but by the sudden rupture of the water line in August of 2010. Alternatively, a jury could find that the damage claimed by Plaintiff was caused by a break or other failure of a pipe which was initially imperceptible, but which gradually increased in severity to the

7

point that it caused substantial water flow and resulting damage. These conflicting contentions of the parties must be weighed by a jury. This is the case, especially in light of the fact that water company records indicate that Plaintiff's water consumption was substantially higher in August of 2010 than it was in previous months. (*See* Water Invoice, ECF Dkt. 26-1.) This requires a determination whether, even if there was seepage from the water line, a fact that is presently unclear, some other "sudden" failure occurred with the plumbing system. Accordingly, a determination as to the actual cause of the damage, and as to whether the resultant damage constitutes a "sudden" event, is within the province of a jury.

Defendant also declined coverage on the basis that damage caused by water on or below the ground surface, regardless of its source, is not within the scope of the Policy. (*See* Policy at 15.) This argument must be rejected because the Policy clearly permits Plaintiff to recover for damages sustained in connection with flooding caused by water escaping from a "plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow." (*See* Policy at 9.) The provision excluding damage from water on or below the surface, read in context, clearly does not relate to plumbing issues, which are explicitly covered by the Policy. Permitting Defendant to avoid liability on the grounds that this event was caused by ground water, as opposed to a plumbing failure, would frustrate the Policy's coverage provisions contained in Section C-13, and would render those provisions illusory.

8

II. <u>Bad Faith</u>

"Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies." *Krisa v. Equitable Life Assur. Soc.*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000). That statute provides, in pertinent part:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorneys' fees against the insurer.

42 Pa. C.S.A. § 8371.

The proper standard to determine the existence of bad faith on the part of an insurer under § 8371 was rearticulated in *Keefe v. Prudential Property and Casualty Ins. Co.*, 203 F.3d 218, 225 (3d Cir.2000)(*citing Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994)(*quoting* Black's Law Dictionary 139 (6th Ed. 1990))):

> [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

9

In the present matter, the Court finds that there are genuine issues of material fact that must be presented to a jury concerning the underlying merits of the case, specifically with regard to the breach of contract claim. It would, therefore, be premature to grant summary judgment in favor of either party on the bad faith claim, as there is a triable issue of fact as to whether Defendant acted in bad faith when the circumstances surrounding the denial of coverage are themselves in dispute.

III.  Pennsylvania Unfair Trade Practices and Consumer Protection Law

The Pennsylvania Unfair Trade Practices and Consumer Protection Law is to be liberally construed so as to effectuate the Legislature's desire to enhance consumer protection. *See Com. v. Percudani*, 825 A.2d 743, 746 (Commw. Ct. 2003)(citing *Commonwealth by Creamer v. Monumental Props., Inc.*, 329 A.2d 812 (Pa. 1974)). "The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1029 (Pa. Super. Ct. 2005)(citing *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 413 Pa.Super. 308, 605 A.2d 373, 376, *appeal denied*, 532 Pa. 665, 616 A.2d 985 (1992)). "The UTPCPL, by virtue of the following language, authorizes the trial judge to grant a successful litigant an award for additional damages, reasonable attorney fees, and costs:"

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award

up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a).

*Neal,* 882 A.2d at 1029-30.

At the outset, however, to be found liable for damages under the UTPCPL, a Defendant must have engaged in some "unfair or deceptive acts or practices" as described in 73 P.S. § 201-2(4). Such types of illicit activity include the use of deceptive representations or false advertising. *See* 73 P.S. § 202-2(4) (listing various types of deceptive practices covered by the UTPCPL).

In the matter *sub judice*, the evidence upon which Plaintiff's UTPCPL claim is premised must be evaluated by a jury, as it is unclear as to whether coverage was properly or improperly denied in the first place. The finding of a violation of the UTPCPL in this case would depend upon whether contested facts in the breach of contract claim are resolved in favor of Plaintiff, and whether the facts surrounding Defendant's denial of the claim supports an award under the UTPCPL. Accordingly, summary judgment cannot be granted on this claim, as it involves material facts that must be evaluated by a jury.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Defendant's Motion for Summary Judgment will be denied. A separate Order will follow, and the matter will be set for trial.

DATE: October 19, 2012

Robert D. Mariani
United States District Judge